UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY McKERR, HEATHER KOCH, JOSEPH FASANO, THOMAS G. FANNING, BRANDON KORESS, A. JOHN YAVARI, WILLIAM ARMONDA, TODD THIELMANN, STEPHEN MELTON, MARK McKENNA, WILLIAM MONTGOMERY, RALPH DYNEK, SARAH McCARRON, JAMES F. HARKNESS, MARK ROTHSCHILD, MARK TELANDER, STEVEN LOULOUSIS, KEVIN E. DUFFY, RORY O'DONNELL, CRAIG S. FELDE, BRAD HOFFMAN, MATT McBRIDE, SAMUEL M. DADDANO, and MARY McKERR, Plaintiffs, v. THE BOARD OF TRADE OF THE CITY OF CHICAGO, INC.; THE CME GROUP, INC.; TERRENCE DUFFY; and PHUPINDER GILL, Defendants. | Case No. 12 C 5008<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On June 22, 2001, the above-named Plaintiffs[1] filed a Verified Complaint in Cook County Circuit Court against The Board of Trade of the City of Chicago, Inc. ("CBOT"); The CME Group, Inc. ("CME"); Terrence Duffy; and Phupinder Gill (collectively, "Defendants"). *McKerr, et al. v. Board of Trade of the City of Chicago, Inc., et al.*, No. 12 CH 23185. Plaintiffs also filed a Motion for Temporary Restraining Order and/or

---

[1] Sarah McCarron and Mary McKerr filed a Notice of Voluntary Dismissal of their claims, pursuant to Federal Rule of Civil Procedure 41. Thus, they are no longer Plaintiffs to this action.

Preliminary Injunction ("TRO"). Plaintiffs' cause of action arises out of CBOT's adoption of a rule that changes CBOT's methodology for calculating settlement prices of agriculture futures traded on CBOT. On June 25, 2012, Defendants removed the action to this Court and Plaintiffs subsequently filed an Emergency Motion for Remand, which is now pending before this Court.[2]

## BACKGROUND

The factual allegations in the Complaint are accepted as true and all reasonable inferences from those facts are drawn in favor of Plaintiffs in considering the Motion for Remand. *See Sheridan v. Flynn*, No. 03-cv-5170, 2003 WL 22282378, at *3 (N.D. Ill. Sept. 30, 2003).

CME is a Delaware corporation that owns and operates a number or large derivative exchanges, including the livestock futures exchange, in Chicago, Illinois. (Compl. ¶ 8.) CBOT is a Delaware corporation and subsidiary of CME that owns and operates a number of large derivative exchanges, including the agricultural futures exchange located in Chicago, Illinois. (*Id.* ¶ 8.) Duffy is an Illinois resident and is Executive Chairman and President of CME. (*Id.* ¶ 13.) Gill is an Illinois resident and is Chief Executive Officer of CME. (*Id.* ¶ 14.) Plaintiffs are professional traders and brokers, Class B shareholders or leased interests of Class B shareholders of CBOT, and shareholders of CME, who trade agricultural futures and derivative contracts on the open

---

[2] Plaintiffs' label of "Emergency Motion" is a misnomer. Plaintiffs knew, as of May 25, 2012, that Defendants intended to adopt the new rule. (Compl. ¶ 80.) Plaintiffs argue that "[t]his matter constitutes an emergency because, as set forth in Plaintiffs' [TRO], the new settlement rule takes effect on June 25, 2012." (Mot. at 3.) At the status on June 26, 2012, Plaintiffs conceded that they could have filed their Complaint on the earlier date before the rule changes took effect.

2

outcry floor exchanges of the CBOT – known as the "pits." (*Id.* ¶¶ 1, 7.) One of the functions of the pits is to determine the final settlement prices at the end of the trading day based upon supply and demand. (*Id.* ¶ 2.) By contrast, in an electronic system, all buy and sell orders and settlement prices are executed electronically, away from the pits. (*Id.* ¶ 22.)

On May 24, 2012, the CME announced that the CME and CBOT would implement a change to its procedures for determining settlement prices. The new rule would blend an electronic trading system with open outcry trading, whereby all final price settlements would be determined using an algorithm based on floor-based trading activity for CBOT agricultural futures. (*Id.* ¶ 26.) The rule change would result in a decrease in trades being sent to the Plaintiffs in the pits and, consequently, floor traders will lose business "almost immediately." (*Id.* ¶ 4.)

Plaintiffs allege that Defendants' decision to implement the rule change is in violation of their fiduciary obligations to Plaintiffs as Class B shareholders of CBOT and shareholders of CME. (*Id.* ¶ 5.) The Amended and Restated Certificate of Incorporation of CBOT ("CBOT Certificate") provides:

> (b) In addition to any approval by the Board of Directors of the Corporation required by this Certificate of Incorporation, the Bylaws or applicable law, the affirmative vote of the holders of a majority votes cast, except in the case of paragraph (4) below, by the holders of Series B-1 Memberships and Series B-2 Memberships, voting together as a class based on their respective voting rights at any annual or special meeting of the Corporation, shall be required to adopt any amendment to this Certificate of Incorporation or the Bylaws or the Rules that, in the sole and absolute determination of the Board of Directors of the Corporation, adversely affects:

3

> (4) the commitment to maintain open outcry markets set forth in Section E of Article IV of this Certificate of Incorporation, which must be approved by a majority of the voting power of the outstanding Series B-1 Memberships and Series B-2 Memberships, voting together as a class . . . ."

(*Id.* ¶ 34.) The new rule has not been submitted to a majority of the voting power of the outstanding Series B-1 Memberships and Series B-2 Memberships. (*Id.*)

Article IV, Section E of the CBOT Certificate provides:

> E. Commitment to Maintain Open Outcry Markets. Subject to the terms and conditions of this Section E of Article IV, the Corporation shall maintain open outcry markets operating as of April 22, 2005 . . . and provide financial support to each such market for technology, marketing and research, which the Board of Directors of the Corporation determines, in its sole and absolute discretion, is . . .
>
> \*   \*   \*
>
> Notwithstanding the foregoing or any other provisions of this Certificate of Incorporation, the Board of Directors of the Corporation may discontinue any open outcry market at any such time and in any such manner as it may determine if: (1) the Board of Directors determines, in its sole discretion, that a market is no longer 'liquid' or (2) the holders of a majority of the voting power of the then outstanding Series B-1 Memberships and Series B-2 Memberships, voting together as a single class based upon their respective voting rights, approve the discontinuance of such open outcry market."

(*Id.* ¶ 35.)

In December 2011, CBOT Directors of CME rejected CME's proposed rule because the proposed change would "materially impair the business opportunities of the Class B memberships." (*Id.* ¶ 76.) The Rule Change Committee of CME also rejected the new rule. (*Id.* ¶ 77.) In March 2012, CME notified the Class B Members of CME that CME would not be implementing the new rule. (*Id.* ¶ 78.)

4

On May 24, 2012, Duffy and Gill announced that CME intended to adopt the new rule as to the agricultural futures contract. (*Id.* ¶ 80.) However, the rule has not been adopted for the livestock futures contract. (*Id.*) On May 25, 2012, CME issued a Special Executive Report, entitled "New Settlement Methodology for CBOT Agricultural Futures, Effective June 25, 2012." (*Id.*)

Plaintiffs bring three counts: a count for injunctive relief (Count I), breach of contract (Count II), and breach of fiduciary duty (Count III).

## LEGAL STANDARD

In general, an action filed in state court may be removed to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). Courts are to interpret the removal statute narrowly. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (*Schur*). A plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand. *See, e.g., id.* Defendants bear the burden of establishing that all of the prerequisites for removal have been satisfied. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004) (defendant must demonstrate "reasonable probability that subject-matter jurisdiction exists"). In determining whether removal is proper, the Court must consider the jurisdictional circumstances at the time that the removal was made. *See, e.g., In re Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992).

## ANALYSIS

Defendants removed Plaintiffs' Complaint to federal court pursuant to 28 U.S.C. § 1331. (Dkt. No. 1 at 5.) Defendants have asserted two grounds for removal:

(1) Plaintiffs' state-law claims necessarily raise a federal issue and (2) complete preemption forecloses any state-law claim. These arguments are addressed in turn.

*Federal-Question Jurisdiction*

A district court has federal-question jurisdiction "of all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, federal-question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (*Caterpillar*); *see Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). A federal question is presented on the face of the complaint where: (1) a plaintiff pleads a cause of action arising under federal law, or (2) "a state law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (*Grable*).

Plaintiffs have only pled state-law claims. Defendants argue that Plaintiffs' claims necessarily turn on a substantive federal issue because in deciding Plaintiffs' state-law claims, a court must determine whether a private party may enjoin a federally regulated entity from enforcing a rule. (Resp. at 3.) Defendants rely on *Grable* but fail to acknowledge that *Grable* has been restricted by the Seventh Circuit and other courts in this district to very limited circumstances. In *Grable*, a federal taxpayer brought an

6

action to quiet title in a state court against a purchaser of the property who acquired the property by a quitclaim deed from the Internal Revenue Service ("IRS"). The IRS had sold the plaintiff's property to the purchaser to satisfy the taxpayer's tax delinquency. In the quiet-title action, the taxpayer asserted that the purchaser's title was invalid because the IRS did not follow proper procedure in giving required notice when seizing the property. The purchaser removed the case to a federal court, claiming that there was federal-question jurisdiction.

The Supreme Court concluded jurisdiction was proper in a federal forum because the plaintiff's quiet-title claim under state law was "premised on a failure by the IRS to give it [a former landowner] adequate notice [of the sale of the property], as defined by federal law." *Id.* at 315. The Court further reasoned that the only matter requiring resolution involved a determination of whether the Internal Revenue Service gave the plaintiff-landowner proper notice in the exact manner prescribed by the United States Code and concluded that this issue, which required interpretation of the federal statute, was a matter that "sensibly belongs in a federal court." *Id.*

In *Bennett v. Southwest Airlines, Co.*, 484 F.3d 907, 912 (7th Cir. 2007) (*Bennett*), the Seventh Circuit considered whether a state-law tort claim arose under federal law. The Seventh Circuit concluded that resolution of the case involved "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Id.* at 910. The Seventh Circuit also noted that "[s]tate issues, such as the amount of damages, may well predominate." *Id.* The *Bennett* court distinguished *Grable*, noting that "there was *nothing* in [*Grable*] but federal law, with the potential to affect the national government's revenues." *Id.* (emphasis in

7

original). Subsequently, in *Chicago Tribune Co. v. Bd. of Tr. of Univ. of Ill.*, 680 F.3d 1001 (7th Cir. 2012), the Seventh Circuit held that "*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under § 1331." *Id.* at 1003.

Here, unlike *Grable*, Plaintiffs' claims do not require the interpretation or application of federal law. Plaintiffs have brought state-law claims for breach of contract and fiduciary duty that require a court to review the CBOT Certificate, as well as the tenets of fiduciary duty under Illinois law. As Plaintiffs themselves state, they "are not challenging the substance of the rule but the way in which it was implemented without a vote." (Reply at 10.) Thus, Defendants' argument that "Plaintiffs' claims necessarily interfere in the regulation of markets by the CFTC [Commodities Futures Trading Commission]" is not persuasive.

Defendants also argue that Plaintiffs had notice of the potential rule change for six months before they received final notice on May 25, 2012, and had an opportunity to object. Further, Defendants argue that Plaintiffs did not raise their claims before the CFTC and, thus, Plaintiffs' Complaint is an attempted "end-run around the rule approval process." But this argument has no merit with respect to whether removal is proper. Furthermore, Plaintiffs' claims have nothing to do with the notice and objection process. Accordingly, Defendants have not carried their burden of establishing federal-question jurisdiction.

*Complete Preemption*

Complete preemption (as opposed to conflict preemption, discussed below) occurs when "the preemptive force of a [federal] statute is so 'extraordinary' that it

'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005) (quoting *Caterpillar*, 482 U.S. at 393). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 467. "Complete preemption, therefore, creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine whether federal jurisdiction exists. If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court." *In re Repository Techs., Inc.*, 601 F.3d 710, 722 (7th Cir. 2010).

To determine whether a claim is subject to complete preemption, the Court asks whether "Congress clearly intended completely to replace state law with federal law and create a federal forum." *Id.* at 723. As the Seventh Circuit has held, only "complete" preemption, and not "conflict" preemption, allows for removal:

> Only 'complete' preemption affects federal subject matter jurisdiction. 'Conflict' preemption relates to the merits of a claim. It comes into play any time a state law allegedly conflicts with federal law. If such a conflict exists, then the state law is preempted and must necessarily give way to federal law. For present purposes, however, the key point is this: ordinary or conflict preemption is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction.

*Vorhees v. Naper Aero. Club., Inc.*, 272 F.3d 398, 403 (7th Cir. 2001).

Defendants argue Plaintiffs' Complaint asks a court to enjoin CBOT from enforcing a rule, relating to the methodology for calculating settlement price. (Mot. for Removal at 6.) And, Defendants argue that Section 22(b) of the Commodity Exchange

9

Act ("CEA") provides the exclusive cause of action available to a person who sustains actual damages caused by CBOT's enforcement of rules or regulations. (*Id.*) 7 U.S.C. § 25(b). In support, Defendants cite *American Agriculture Movement, Inc. v. Board of Trade of City of Chicago*, 977 F.2d 1147 (7th Cir. 1992) (*American Agriculture*), which they argue "establishes that trading on or operation of a contract market is subject solely to federal law and that it is impossible to bring a state law claim affecting trading on or operation of a futures market." (Resp. at 7.)

But in *American Agriculture*, the Seventh Circuit did not hold that Section 22(b) of the CEA *completely* preempts state-law claims. *See American Agriculture*, 977 F.3d at 1156 ("In sum, the structure and history of the CEA indicate that the propriety of conflict preemption depends upon the particular context."). In that case, a national association of farmers sued CBOT for violating its duty to prevent manipulation of futures prices. The Seventh Circuit held that plaintiffs' state-law claims for breach of fiduciary duty and negligence were preempted by the CEA.

But importantly, the Seventh Circuit noted:

> Section 22(b), by its terms, provides that "[t]he rights of action authorized by this subsection shall be the exclusive remedy *under this chapter* available to any person who sustains a loss" as a result of an exchange's action. Were the emphasized qualifier left out, the CBOT might well have a point. Its presence, however, indicates that the exclusivity provision extends only to private actions seeking redress under the CEA, and does not curtail actions brought under other federal laws or state law. Consequently, any argument for preemption must rest upon a source other than § 22(b).

*Id.* at 1154-55(emphasis in original). And the Seventh Circuit underscored another important provision of the CEA: "Nothing in this section shall supersede or limit the

jurisdiction conferred on courts of the United States *or any State*." *Id.* at 1155 (emphasis in original) (citing 7 U.S.C. § 2). Referring to this provision as the "savings clause," the Seventh Circuit held, "[t]he saving clause . . . tells us that Congress did not intend to preempt the field of futures trading." *Id.* at 1155.

*American Agriculture* demonstrates that whether Plaintiffs' claims are preempted by the CEA is an issue of *conflict* preemption. As discussed above, only "complete" preemption provides a basis for federal jurisdiction. "Conflict preemption, unlike complete preemption, actually is a true preemption doctrine and is an issue left to the state court in this case, since conflict preemption does not provide an independent basis for federal jurisdiction/removal." *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare Trust Fund*, 538 F.3d 594, 601 (7th Cir. 2008). Accordingly, Defendants have not carried their burden of establishing complete preemption as to establish a basis for federal jurisdiction.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Emergency Motion to Remand [10] to Cook County Circuit Court is granted. Defendants' Motion to Compel [12] and Defendants' Motion for Extension of Time [16] are denied as moot.

Date: 8-15-12

JOHN W. DARRAH
United States District Court Judge

11